**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marshall Benjamin Winner, | No. CV-20-01698-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Marshall Winner challenges the Social Security Administration's ("SSA") denial of Disability Insurance Benefits under Title II of the Social Security Act ("Act"). (Doc. 12 at 11–30.) The Court has reviewed the briefs (Docs. 18, 28, 32) and the Administrative Record (Doc. 12, "AR"). The Court now finds that the administrative law judge's ("ALJ") decision (AR at 11–30) contained error and remands for further proceedings.

## I.    BACKGROUND

Winner filed an application for benefits in January 2017. (AR at 14.) The Commissioner denied his application initially and on reconsideration. (*Id.* at 14.) Winner appeared at a hearing before an ALJ. (*Id.* at 14, 31–67.) The ALJ issued a written decision finding Winner not disabled. (*Id.* at 26; *see id.* at 11–30.) The Appeals Council denied review. (*Id.* at 1–6.) Winner now seeks judicial review pursuant to 42 U.S.C. § 405(g).

After reviewing and considering the medical opinions and records, the ALJ evaluated Winner's disability based on the following severe impairments: bipolar disorder,

1   adjustment disorder, obsessive-compulsive disorder, personality disorder, obesity,
2   hypertension, ankle impairment, knee impairment, and elbow impairment. (*Id.* at 16–17.)
3   In making this determination, the ALJ reviewed the entire record, including medical
4   records and opinions and statements from Winner. (*Id.* at 17–24.) She reviewed the record
5   when making the mental health determination by considering the paragraph B criteria,
6   paragraph C criteria, and the other criteria of listings 1.02, 1.03, 4.04, 12.04, 12.05, and
7   12.06. (*See id.* at 17–18.) She then determined that Winner "does not have an impairment
8   or combination of impairments that meets or medically equals the severity of one of the
9   listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
10  404.1525 and 404.526)." (*Id.* at 17; *see id.* at 17–18.)

11          After that, the ALJ calculated Winner's residual functional capacity ("RFC").
12  (*Id.* at 18–24.) She determined that he had the RFC "to perform medium work as defined
13  in 20 CFR 404.1567(c) except [he] should not perform work with the general public. He is
14  able to have occasional and superficial contact with co-workers. [He] is able to perform
15  simple routine work involving simple work related decisions and simple instructions with
16  few changes in the work setting." (*Id.* at 18; *see id* at 18–24.) When determining his RFC,
17  the ALJ analyzed conflicting medical and opinion evidence. (*Id.* at 18–24.) The ALJ found
18  that the medical record demonstrates functional abilities and behaviors inconsistent with
19  the duration, frequency, and severity of his alleged limitations. (*See id.*) Based on his RFC,
20  the ALJ determined that Winner could not perform any past relevant work. (*Id.* at 24.) But
21  she determined that a significant number of jobs exist "in the national economy that [he]
22  can perform." (*Id.* at 25.) And so, she found that he was "not disabled." (*Id.* at 25–26.)

23  **II.     LEGAL STANDARD**

24          In determining whether to reverse an ALJ's decision, the district court reviews only
25  those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,
26  517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability
27  determination only if it is not supported by substantial evidence or is based on legal error.
28  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a

scintilla, but less than a preponderance; it is relevant evidence that a "reasonable mind might accept as adequate to support a conclusion" considering the record as a whole. *Id.* (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). Finally, the Court may not reverse an ALJ's decision on account of an error that is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1119 n.11 (9th Cir. 2012) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations and internal quotation marks omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's

1   RFC and determines whether the claimant is still capable of performing past relevant work.

2   *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not,

3   the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant

4   can perform any other work in the national economy based on the claimant's RFC, age,

5   education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled;

6   if not, the claimant is disabled. *Id.*

7   **III.   DISCUSSION**

8        Winner raises two arguments here: (1) the ALJ failed to properly analyze and weigh

9   Dr. Graeber's and Dr. Nichols' medical opinions resulting in an erroneous RFC

10  determination; and (2) the ALJ improperly rejected subjective testimony.

11       **A.   Medical Opinion Evidence**

12       The ALJ must consider all the medical evidence in the record. Medical opinion

13  sources are separated into three types: (1) treating physicians (who treat a claimant), (2)

14  examining physicians (who examine but do not treat a claimant), and (3) non-examining

15  physicians (who do not examine or treat a claimant). *Lester v. Chater*, 81 F.3d 821, 830

16  (9th Cir. 1995) (amended April 9, 1996). For disability benefit applications filed prior to

17  March 27, 2017, treating medical sources are generally given more weight than non-

18  examining sources due to a treating physician's heightened familiarity with a claimant's

19  condition. 20 C.F.R. § 404.1527(a)(2). If the ALJ declines to give controlling weight to a

20  treating source's opinion, the ALJ must consider several factors—including the examining

21  relationship, treatment relationship, the length and nature of treatment, supportability,

22  consistency, and specialization, among other factors—in deciding how to weigh the

23  source's opinion. 20 C.F.R. § 404.1527(c). The ALJ must thereafter provide an explanation

24  for the weight given to each medical source. 20 C.F.R. § 404.1527(f)(2). If certain evidence

25  contradicts a treating physician's opinion, the ALJ must provide "specific and legitimate

26  reasons supported by substantial evidence" for rejecting the treating physician's opinion.

27  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Lester*, 81 F.3d at 830)

28  (internal citation marks omitted).

Despite the deference generally afforded to treating physicians, the ALJ is not required to rely on them. If a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record," the ALJ need not give it controlling weight. *Id*. § 404.1527(c)(2); s*ee also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings). If a treating physician's opinion is not given controlling weight, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) in assigning its relative weight. When rejecting a treating physician's testimony, "the ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Orn*, 495 F.3d at 631 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Winner argues on appeal that the ALJ improperly weighed the opinions of Dr. Graeber and Dr. Nichols, two of his treating physicians. (Doc. 18 at 14–21.) Winner asserts there was not substantial evidence to support the ALJ's decision to give Dr. Graeber's and Dr. Nichols' opinions "minimal weight" and "limited weight," respectively. (*Id.*) The Commissioner argues that the ALJ did have substantial evidence and that Winner simply disagrees with the ALJ's interpretation of the medical evidence. (Doc. 28 at 9–14.) The Court agrees with Winner. The ALJ's decision does not identify substantial evidence explaining why Dr. Graeber's and Dr. Nichols' opinions were assigned "minimal weight" and "limited weight," respectively. No reasonable mind would examine the record and conclude that the opinions of Dr. Rubin and Dr. Fair, the state agency medical consultants, more closely align with the record and therefore should be afforded greater weight.

First, the value of the Dr. Rubin's and Dr. Fair's opinions is minimal. They were issued in May and June of 2017—more than a year before Winner was psychiatrically committed for road rage and homicidal ideation in October and December 2018. (AR at 21–24, 69–79, 81–94.) Clearly, Winner was getting worse, not better, when he was

evaluated by Dr. Rubin and Dr. Fair. Moreover, Winner's medical record consists of about another two years of subsequent history that Dr. Rubin and Dr. Fair could not review. (*See id.* at 19–24.) Winner's mental state appears to have been progressively degrading, not improving, after their assessments were made. The ALJ's statement in support of the weight she assigned Dr. Rubin's and Dr. Fair's opinions that "the medical record supports gradual improvement in the claimant's mental health symptoms overall as discussed herein" is not based in fact. (*Id.* at 24.)

Second, the ALJ ignored critical pieces of the medical record, namely, his two psychiatric commitments, when determining the weight to afford Dr. Graeber's and Dr. Nichols' medical opinions. (*See* AR at 23–24.) Selectively choosing parts of the record that indicate improvement without considering the context of those assessments, especially the mental state from which Winner had "improved," is unreasonable. For example, while it is true that Winner reported he had recently attended a religious retreat on October 5, 2018, and such evidence would typically be a sign of improvement; the ALJ ignored that Winner was hospitalized eight days later. Thus, when the entire record is considered, the ALJ's explanation for devaluing Dr. Graeber's and Dr. Nichols' opinions is not supported by substantial evidence.

Both errors outlined above are grounds for a remand. The ALJ must perform additional administrative proceedings to determine the proper weight to assign Dr. Graeber's and Dr. Nichols' medical opinions. These proceedings will change the record regarding the ALJ's analysis of Winner's subjective testimony. After the record is further developed, any additional conclusions drawn by this Court would be irrelevant. For this reason, the Court forgoes ruling on the parties' arguments regarding Winner's subjective testimony.

## IV.    CREDIT AS TRUE RULE

After determining that the ALJ made an error sufficiently serious to warrant a remand, the Court decides whether it will apply the credit-as-true rule. The credit-as-true rule allows a court to remand a Social Security case for an award of benefits rather than

remand the case for additional evidence. *Treichler*, 775 F.3d at 1101–02. Whether the credit-as-true rule is mandatory or discretionary in the Ninth Circuit is unclear because Ninth Circuit jurisprudence is split on the issue. *Compare Vasquez*, 572 F.3d at 593–94, *and Garrison v. Colvin*, 759 F.3d 995, 1019–23 (9th Cir. 2014), *with Treichler*, 775 F.3d at 1099–02. The rule can only be applied when three elements are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even then, the rule is rarely applied because the decision to remand or apply the rule is discretionary and courts "frequently exercise[] [their] discretion to remand for further proceedings, rather than benefits." *Treichler*, 775 F.3d at 1102.

The Court will not apply the credit-as-true rule here. Even if Dr. Graeber's and Dr. Nichols' medical opinions regarding Winner's limitations were credited as true, the ALJ would not be required to find him disabled on remand. Dr. Graeber's and Dr. Nichols' opinions are just a few pieces of an extensive and at times inconsistent record. For example, the ALJ would still need to consider Winner's subjective testimony. Accepting Dr. Graeber's and Dr. Nichols' opinions as true does not mean that the ALJ must weigh Winner's subjective testimony differently. Most importantly, it does not require the ALJ to find Winner disabled.

## V.     CONCLUSION

Accordingly,

**IT IS ORDERED remanding** this matter to the Social Security Administration for further proceedings consistent with this order.

///

///

///

1       **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter final
2   judgment consistent with this Order and close this case.
3       Dated this 21st day of March, 2022.
4
5
6                       Michael T. Liburdi
7                       United States District Judge